**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **RICHARD VILLANUEVA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 5:13-29391** |
| | ) | |
| **WARDEN ZIEGLER,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 13.), filed on February 5, 2014. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 16.) Plaintiff filed his Response on February 19, 2014. (Document No. 15.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' Motion should be granted.

**PROCEDURAL BACKGROUND**

On November 19, 2013, Plaintiff, acting *pro se* and incarcerated at FCI Beckley, located in Beckley, West Virginia, filed his Complaint in this matter claiming entitlement to relief pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971).[1] Plaintiff names the following as Defendants: (1) Warden Ziegler; (2)

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed

Ms. B. Bowman, Supervisor of Education; and (3) Ms. H. Lacy James, Teacher. (Id.) Plaintiff

alleges that Defendants are improperly refusing to accept his high school diploma. (Id., pp. 4 - 5.)

Specifically, Plaintiff alleges as follows:

> After arriving at FCI Beckley, I provided the institutional Education Department
> with proper documentation showing that I have successfully obtained my High
> School Diploma. Because FCI Beckley receives payment for each inmate that they
> enroll into G.E.D. classes, they refuse to properly accept my High School Diploma
> and by doing such actions, stops me from advancing on to college courses and
> participating in certain programs that are only provided to inmates with G.E.D./High
> School Diplomas. The denial by the institution to accept my diploma violates my
> right to advance my education. By the institution trying to place me back to a level
> which I already "successfully" completed, instead of advancing me forward, is
> exactly the same as to deny me an education. Because the Education Department gets
> funds for each inmate who complete the G.E.D., I am being used due to the fact the
> staff knows I am a good candidate to pass because in actuality I already have a High
> School Diploma.

(Id.) As relief, Plaintiff requests the following: (1) The Court "make the institution accept my High

School Diploma;" (2) The Court "order that I be allowed to advance further in college classes;" (3)

The Court "award me damages for expenses paid to receive verification of my diploma;" (4) The

Court "award me to receive payment from the B.O.P. regarding all court cost and fees paid for this

action;" and (5) "Any other relief deemed proper." (Id., p. 5.)

By Order entered on November 20, 2013, the undersigned found that Plaintiff had neither

paid the filing and administrative fee nor submitted an Application to Proceed *in Forma Pauperis*

or Without Prepayment of Fees. (Document No. 3.) The undersigned, therefore, ordered that Plaintiff

either "pay the Court's filing fee ($350) and administrative fee ($50) totaling $400 or obtain

approval to proceed *in forma pauperis* or without prepayment of fees." (Id.) On November 25, 2013,

Plaintiff paid the filing fee and administrative fee totaling $400. (Document No. 4.) On November

---

liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

26, 2013, the Clerk's Office mailed a Summons and Complaint by certified mail/return receipt requested to Defendants. (Document No. 5.) The Docket Sheet reveals that the Summonses were returned executed. (Document Nos. 6 - 10.)

On February 5, 2014, Defendants filed their "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 13 and 14.) Defendants contend that Plaintiff's Complaint should be dismissed based upon the following: (1) Plaintiff makes no specific claims against Defendants (Document No. 14, p. 7.); and (2) "The Defendants are entitled to qualified immunity" (Id., pp. 7 - 10.).

In support, Defendants filed the following Exhibits: (1) The Declaration of Heather James (Document No. 13-1, pp. 2 - 3.); (2) A copy of Plaintiff's "Education Initial Interview Sheet" (Document No. 13-2, pp. 2 - 3.); (3) A copy of Plaintiff's "Release of Information Form" (Id., p. 5.); (4) A copy of a letter dated May 15, 2013, from Heather Lacy, Literacy Coordinator, addressed to the Rochester City School District (Id., pp. 7 - 8.); (5) A copy of Program State 5350.28 (Id., pp. 10 - 49.); and (6) A copy of the GED Q & A Guidance (Id., p. 51.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on February 19, 2014, advising him of the right to file a response to the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 16.) Plaintiff filed his Response in Opposition on the same day. (Document No. 15.) In his Response, Plaintiff first states that he "certifies that he 'truthfully' received his high school diploma." (Id., p. 1.) Plaintiff continues to complain that FCI Beckley "fails to accept such documentation from [Plaintiff] and from Capitol High School, which shows that a successful diploma was received." (Id., p. 2.) Second, Plaintiff asserts that he has stated a claim against Defendants Ziegler and Bowman. (Id.) Plaintiff

explains that "if a suit is brought against the education department . . . then of course the warden and the supervisor of education are accountable." (<u>Id.</u>) Plaintiff further argues that "these very same individuals who have authority over any and all doings of the officials below them, who they 'SUPERVISE,' this is why Ms. Bowman is called 'Supervisor' and this is why Mr. Ziegler is called 'Warden.'" (<u>Id.</u>) Plaintiff also complains that Ms. Bowman fails to "verify if such employees can perform effectively in the [teaching] positions she allows them to partake in." (<u>Id.</u>) Third, Plaintiff appears to object to Ms. James' Declaration because it does not "outline any credentials" by Ms. James. (<u>Id.</u>, p. 3.) Plaintiff states that he is "left with the impression that Ms. James is trying to say that no such school exist to where I received my diploma." (<u>Id.</u>) Plaintiff argues that Capital High School does exist and Ms. James cannot obtain verification of his records because her credentials are improper. (<u>Id.</u>) Fourth, Plaintiff claims that "the institution receives funds for each inmate who enrolls and passes the GED test . . . and knowing that [Plaintiff] is a good candidate due to the fact he has out scored a high school diploma." (<u>Id.</u>, p. 4.) Thus, Plaintiff states "a person . . . should not be used and abused in such a cruel and unusual manner." (<u>Id.</u>) Fifth, Plaintiff argues that "by trying to place [Plaintiff] back into a level which he successfully completed (high school), is to deny him a continuation of education." (<u>Id.</u>) Plaintiff, therefore, argues that Defendants' Motion should be denied. (<u>Id.</u>, pp. 5 - 6.)

On March 4, 2014, Plaintiff filed a "Motion Seeking to Supplement Originally Submitted Civil Rights Action Exhibits Containing Probative Value."[2] (Document No. 17.) In support, Plaintiff states that "these exhibits were not available to him at the time of the original filing of the civil rights litigation" and "these exhibits will assist the Court when determining the merits of the case."

---

[2] By separate Order entered this day, the undersigned has granted Plaintiff's Motion.

(Id.) As Exhibits, Plaintiff attaches the following: (1) A copy of his diploma from Capitol High School dated April 25, 2013 (Id., p. 5.); and (2) A copy of Plaintiff's transcripts from Capitol High School (Id., pp. 6 - 7.).

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a pro se Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims,

5

the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C.

6

§ 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under <u>Bivens</u> must show the violation of a valid constitutional right by a person acting under color of federal law.

1.    **Plaintiff's claims based upon a theory of *respondeat superior*:**

Plaintiff names the following supervisory officials as Defendants: (1) Joel Ziegler, Warden of FCI Beckley; and (2) Bonita Bowman, Supervisor of Education. Plaintiff appears to contend that Defendants Ziegler and Bowman violated his constitutional rights by failing to ensure that his "high school diploma" obtained through an online course was accepted. (Document No. 1.) Defendants Ziegler and Bowman contend that they are entitled to summary judgment because Plaintiff's claims against them are improperly raised under the doctrine of *respondeat superior*. (Document No. 14, pp. 7 - 8.) In Response, Plaintiff argues that "if a suit is brought against the education department . . . then of course the warden and the supervisor of education are accountable." (Document No. 15.) Plaintiff contends that "these very same individuals who have authority over any and all doings of the officials below them, who they 'SUPERVISE,' this is why Ms. Bowman is called 'Supervisor' and this is why Mr. Ziegler is called 'Warden.'" (<u>Id.</u>)

The undersigned finds that Plaintiff's claim against Defendants Ziegler and Bowman are improperly raised under the doctrine of *respondeat superior*. Plaintiff argues that Defendants are responsible because they "have authority over any and all doings of the officials below them." "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. at 1948("Because vicarious

7

liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Also see Monell v. Department of Social Services of the City of NY, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability, however, may attach to a supervisory official if "conduct directly causing the deprivation was done to effectuate an official policy or custom for which [the official] could be liable." Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982), *abrogated on other grounds by* County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Further, supervisory officials may be liable for acts of their subordinates where "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative fact in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). Thus, the inquiry for the Court is whether the Defendant individually "acted wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312, 1315 (4th Cir. 1991).

In the instant case, Plaintiff fails to allege how Defendants Ziegler and Bowman were personally involved in violating Plaintiff's constitutional rights. Essentially, Plaintiff alleges that Defendants Ziegler and Bowman violated his constitutional rights with respect to their failure to supervise employees. Plaintiff, however, fails to allege any personal involvement by Defendants Ziegler and Bowman. There is no indication that Defendants were aware that prison officials were violating Plaintiff's constitutional rights, but failed to take any action. Accordingly, Plaintiff has improperly raised his claim against Defendants Zielger and Bowman under the doctrine of *respondeat superior* and has failed to establish supervisory liability. The Court therefore finds that Motion to Dismiss, or in the Alternative, Motion for Summary Judgment should be granted as to

Defendants Ziegler and Bowman.

**2.     No Constitutional Violation:**

Plaintiff appears to contend that Defendants are violating his constitutional rights by failing to recognize his high school diploma. Defendants argue that Plaintiff's "high school diploma" is not acceptable because it was obtained through an online program. In support, Defendants attach the Declaration of Heather James, a Teacher and Literacy Coordinator at FCI Beckley. (Document No. 13-1.) Defendant James states that in her position she has access to SENTRY, the Bureau of Prisons' online system that tracks the status and activities of inmates, Inmate Central Files, BOP Program Statements, and other BOP documents. (Id.) Defendant James explains that in her position as Literacy Coordinator, she met with Plaintiff and completed an Education Initial Interview Sheet following his arrival at FCI Beckley. (Id.) Specifically, Defendant James states as follows in her Declaration (Id., pp. 1 - 2.)

> 6.     I noticed during that meeting that Plaintiff had been enrolled in GED classes at other BOP institutions, and that while Plaintiff had signed out of GED classes at one point, he had re-enrolled in GED classes.

> 7.     Plaintiff informed me that he had his high school diploma, stating that he graduated from Capital High School in Rochester, New York, so I had Plaintiff complete a release of information form, authorizing Capital High School to release a copy of Plaintiff's high school diploma or an unofficial copy or statement of completion to me.

> 8.     I attempted to verify that Plaintiff graduated from Capital High School in Rochester, New York, but I was unable to locate a school with that name. I sent correspondence to the Rochester City School District, attempting to verify Plaintiff's high school diploma or GED completion.

> 9.     In response to my letter to the Rochester City School District, I received a call from an individual from that district. I was informed that there was no Capital High School in their school district, that Plaintiff's name was not in their system, and that Plaintiff did not have a diploma from their school district.

10.     When Plaintiff was informed of what I had learned, Plaintiff responded that he would get the information himself. Plaintiff subsequently provided me with a copy of a high school diploma from an online diploma program.

11.     I noticed that the date on the diploma coincided with the time he was incarcerated with the BOP. I informed Plaintiff that the BOP does not accept online diploma programs, as set out in BOP Program Statement (P.S.) 5350.28, Literacy Program (GED Standard), and as explained in the GED Question and Answers (Q&A) Guidance.

12.     The Q&A Guidance exists for Education Staff, and was issued by the BOP's Industries, Education and Vocational Training (IE&VT) Division, located in the BOP's Central Office. The relevant questions were completed by Huilan Larson, an Education Specialist with the BOP.

The Attorney General requires the BOP to conduct adult literacy programs in federal prisons for the benefit of inmates who are functionally illiterate. See 18 U.S.C. § 3624(f); 28 C.F.R. §§ 544.70 - 75. Section 544.70 requires that inmates attend adult literacy programs for a minimum of 240 instructional hours or until a GED is achieved, whichever occurs first. 28 C.F.R. § 544.70.[3] Inmates are required to participate in the adult literacy program for 240 instructional hours, or be subject to disciplinary sanctions. 28 C.F.R. § 544.75.[4] The BOP offers good time credit as an encouragement for an inmate to successfully complete the literacy program. 28 C.F.R. §§ 523.20 and 544.73.[5]

---

[3] Section 544.70 provides that "an inmate confined in a federal institution who does not have a verified General Educational Development (GED) credential or high school diploma is required to attend an adult literacy program for a minimum of 240 instructional hours or until a GED is achieved, whichever occurs first." 28 C.F.R. § 544.70.

[4] Section 544.75 states that "staff may take disciplinary action against an inmate lacking a GED credential or high school diploma if that inmate refuses to enroll in, and to complete, the mandatory 240 instructional hours of the literacy program."

[5] Section 544.73(c) states that "[a]t the end of 240 instructional hours . . . the unit team during scheduled program review sessions shall meet with the inmate to encourage continued participation in the literacy program until the inmate earns a GED credential or high school diploma."

Plaintiff appears to allege that his constitutional rights were violated when Defendants failed to recognize that his "high school diploma" earned through an online course was an acceptable equivalent to completing the BOP literacy program. The Fifth Amendment protects against deprivations of life, liberty, or property by the federal government. See U.S. Const. amend. V. In order to prevail on a due process claim, a plaintiff must show that the government has interfered with a protected liberty or property interest and that the procedures that led to the deprivation were constitutionally sufficient. Thus, plaintiff must first demonstrate that she had a protected liberty interest. The fact of conviction and imprisonment implies the inmate's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Id. (emphasis added) To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(quoting Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." Id. at 343. The Supreme Court held in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or

(2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Id., 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. Id.

The undersigned finds that inmates do not have a constitutionally protected right "to remain uneducated." Rutherford v. Hutto, 377 F.Supp. 268, 272 (E.D.Ark. 1974)(stating that "[t]he 'constitutional right to be ignorant' or 'the constitutional right to remain uneducated,' which petitioner postulates, simply does not exist"). Instead of participating in and completing the BOP literacy program, Plaintiff requests that this Court require the BOP to recognize his "diploma" obtained from an online course as acceptable. The BOP's failure to recognize a diploma earned through an online or correspondence course does not violate an inmate's constitutional rights. See Martin v. O'Brien, 2006 WL 1206582 (E.D.Ky. April 28, 2006), aff'd, 207 Fed.Appx. 587 (6th Cir. 2006)(finding that the BOP did not violate inmate's constitutional rights by refusing to grant inmate an exemption based upon a certificate from a correspondence school, which inmate claimed to be equivalent to a high school diploma). Additionally, it has been recognized that the BOP's literacy program serves a valid penological interest of education and rehabilitation. Burrell v. Gunja, 2001 WL 34713499, at *4 (D.Md. June 8, 2001), aff'd, 22 Fed.Appx. 225 (4th Cir. 2001)(stating that the BOP's requirement that an inmate attend the literacy program does not violate the inmate's constitutional rights because the "literacy program clearly serves the valid penological interests of education and rehabilitation"); also see Mukmuk v. Commissioner, 529 F.2d 272 (2nd Cir. 1976)(stating that an achievement test requirement for inmates was reasonable in light of the

institution's rehabilitation program); <u>Jackson v. McLemore</u>, 523 F.2d 838 (8th Cir. 1975)(finding that an inmate may not be punished because he fails to learn, but he may be required to participate in a literacy program because a state has a sufficient interest in eliminating illiteracy); and <u>Rutherford</u>, 337 F.Supp. at 272 - 73 (finding that a "state has a sufficient interest in eliminating illiteracy among its convicts to justify it in requiring illiterate convicts, including adults, to attend classes"). Furthermore, Plaintiff's claim that the BOP is violating his constitutional rights by preventing him from earning good time credit is without merit. It is well recognized that although a prisoner may have a due process right concerning good-time credit that is taken away, inmates do not have a protected liberty interest in the opportunity to earn good-time credit. <u>Wolff</u>, 418 U.S. at 557, 94 S.Ct. at 2975. Accordingly, the undersigned finds that Plaintiff's allegations cannot be construed to implicate a constitutional right for the violation of which relief can be granted under <u>Bivens</u>. Plaintiff's Complaint must therefore be dismissed. The undersigned finds it unnecessary to consider the other reasons which the Defendants have submitted for dismissal.

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 13.), **DISMISS** Plaintiff's Complaint (Document Nos. 1 and 17.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and

72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and transmit a copy to counsel of record.

Date: June 17, 2014.

R. Clarke VanDervort
United States Magistrate Judge

14